# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KELLY NUNES,<br><br>Defendant. | Case No. 2:10-cr-00356-LDG (VCF)<br><br>**ORDER** |

The defendant, Kelly Nunes, moves pursuant to 28 U.S.C. §2255 to vacate, set aside, or correct his sentence (ECF No. 484). Nunes asserts four grounds for relief: (1) constructive amendment of the indictment, (2) actual innocence, (3) prosecutorial misconduct, and (4) ineffective assistance of counsel. The latter three grounds rest upon a common theme: that Nunes' conviction, which is unlawful because he is actually innocent, resulted from the government withholding exculpatory evidence and allowing witnesses to perjure themselves, and his counsel's failure to present exculpatory evidence at his trial. The United States opposes the motion (ECF No. 487), and Nunes has filed a reply (ECF No. 521). Having read and considered the motion, the files, and the record, the Court finds that they conclusively show that Nunes is not entitled to any relief.

Nunes and his co-defendants were charged with conspiracy to commit wire fraud, mail fraud, and bank fraud in violation of 18 U.S.C. § 1349 for agreeing to engage in fraudulent mortgage transactions related to two parcels of real property. He and his co-defendants were also charged with the underlying substantive counts of bank fraud and aiding and abetting in violation of 18 U.S.C. § 1344(1) and (2) for the fraudulent mortgage transactions related to each of the properties. Nunes elected to have the charges tried by a jury. The jury convicted Nunes of the conspiracy charge and one of the two substantive counts of bank fraud, acquitting him of the other substantive count.

This Court subsequently sentenced Nunes to a term of 51 months' imprisonment and five years of supervised release. Nunes filed a timely appeal alleging the trial court had misstated the definition of materiality during jury instructions, an issue previously raised by defense counsel at trial. The Ninth Circuit affirmed his conviction. *United States v. Nunes*, 560 Fed. Appx. 676 (9th Cir. 2014) (mem.). Nunes then filed the instant motion.

Analysis

"[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). "Constitutionally ineffective assistance of counsel constitutes cause sufficient to excuse a procedural default." *United States v. Ratigan*, 351 F.3d 957, 964-65 (9th Cir. 2003). Further, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro*, 538 U.S. at 504.

A criminal defendant is entitled to reasonably effective assistance of counsel. *McMann v. Richardson*, 377 U.S. 759, 771, n. 14 (1970). The right to effective assistance of counsel is the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). When a true adversarial criminal trial has been conducted, even if defense counsel

has made demonstrable errors, the requirements of the sixth amendment have been met. *United States v. Cronic*, 466 U.S. 648, 656 (1984). Counsel is presumed competent. As such, the burden rests on the defendant to establish a constitutional violation. *Id.* at 658.

To obtain reversal of a conviction for ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense to such a degree as to deprive the defendant of a fair trial. *Strickland*, 466 U.S. at 687-88, 692 (1984). To establish deficient performance under *Strickland*, it must be shown "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Exercising highly deferential judicial scrutiny, *id.* at 699, this court inquires "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. "Such assessment must be made 'from counsel's perspective at the time,' so as 'to eliminate the distorting effects of hindsight.'" *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 689).

Prejudice can be presumed only "where there has been an actual breakdown in the adversarial process at trial." *Toomey v. Bunnell*, 898 F.2d 741, 744 n. 2 (9th Cir. 1990); *See also Cronic, supra*. Demonstrating prejudice imposes a "substantial burden" that demands far more than listing all of the things the petitioner thinks his attorney "should have done" and speculating that, had he done them, he might have been acquitted. *See, e.g., Gonzalez v. Knowles*, 515 F.3d 1006, 1015–16 (9th Cir. 2008) (no prejudice where movant alleges that counsel failed to investigate undiagnosed mental illness). Moreover, prejudice exists only where the movant does not "receive[] a fair trial" and the verdict resulting is not "worthy of confidence." *Downs v. Hoyt*, 232 F.3d 1031, 1038 (9th Cir. 2000); *accord Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993) ("[F]ocusing solely on mere outcome determination, without attention to whether the proceeding was

3

fundamentally unfair or unreliable . . . may grant the defendant a windfall to which the law does not entitle him."). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

In addition, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Such a "claim of innocence is thus 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup v. Delo*, 513 U.S. 298, 315 (1995) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). The Supreme Court further instructed:

> Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim. However, if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.

*Schlup*, 513 U.S. at 316. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The petitioner thus is required to make a stronger showing than that needed to establish prejudice." *Id.* at 327.

Actual Innocence

The Court will not consider the merits of Nunes' defaulted claims through the gateway of "actual innocence" because he has failed to allege "new evidence" that would even weakly suggest he is actually innocent. The Court has broadly construed Nunes' motion and reply to identify any allegations made by Nunes that would constitute new evidence. To the extent that Nunes has alleged specific facts supporting his §2255 petition, he did so in his reply arguments in support of his claims of prosecutorial misconduct and ineffective assistance of counsel.[1] In support of those claims, however, Nunes has not alleged or identified any evidence discovered subsequent to his trial. Rather, the evidence he specifically alleges in those claims is that which his counsel possessed, or he alleges his counsel possessed, at the time of trial. He further alleges, however, his counsel was ineffective for failing to proffer it at trial. As such, appropriate consideration of that evidence is pursuant to Nunes claim that he received ineffective assistance of counsel.

Ineffective Assistance of Counsel

Nunes' arguments that his counsel was ineffective, even as alleged in his reply, amounts to nothing more than a long, hindsight listing of numerous items–most regarding issues of modest strategic value–that he thinks his counsel "should have done" and speculating that it was these failures (or, perhaps the cumulation of these errors) that caused the jury to convict him. Whether considered singly or cumulatively, Nunes has neither shown his counsel made errors so serious that his performance fell below an objective standard of reasonableness nor shown that his counsel's performance prejudiced the defense to such a degree as to deprive him of a fair trial.

---

[1] In support of his claim of actual innocence, Nunes has only asserted that he was wrongfully convicted "due to defense counsel's ineffective assistance, as well as prosecutorial misconduct."

5

Nunes' arguments fail, in part, because they are contrary to the record. For example, he argues his counsel changed the theory of defense during the opening statement to a "lender negligence" defense. He further argues, generally, that counsel failed to pursue a theory that Nunes "was an unknowing and unwilling accomplice to the scheme(s) set forth by John Williams and Carson Winget." The record refutes Nunes' vague allegations. His counsel's opening statement focused on asserting that Nunes did not knowingly submit false loan applications, did not commit bank fraud, and did not conspire to commit those crimes. Instead, he argued, Nunes was the victim of "a web of lies by Jack Williams and Carson Winget" and that they set him up to be the fall guy. Counsel did not alter the defense theory and suggest Nunes was not guilty because of "lender negligence." Counsel's closing argument similarly focused on arguing both the absence of evidence that Nunes' participated in the charged crimes and the testimony implicating Nunes consisted of "lies" given by "liars" and "forgers" with government-created motives to lie. Between the opening statement and closing argument, defense counsel's questioning of witnesses advanced this theory and seeking to show that Nunes was the victim of Williams and Winget's schemes.

Without dispute, as clearly shown by the appeal, counsel also sought to defend Nunes on the theory that the representations that were made on the loan applications were not material misrepresentations because of the lenders' policies and practices at the time the loans were made. While the Ninth Circuit affirmed this Court's decision to not give such an instruction to the jury, counsel's effort to assert this additional defense neither amounted to incompetence nor prejudiced Nunes.

To the extent Nunes' has asserted specific allegations, those allegations concern his counsel's alleged failure to present additional evidence impeaching Abel Manrique, one of the eighteen witnesses for the prosecution. Manrique testified on the third day of trial and was on the witness stand for thirty minutes. Nunes' counsel, and counsel for co-

defendants, stipulated with the government that Manrique's testimony did not relate to the transactions charged in the indictment. Rather, the government proffered Manrique as a witness pursuant to Federal Rule of Evidence 404(b) regarding a prior loan transaction in which Nunes had participated.

At trial, Manrique testified that he had been employed as a manager at an adult dance club and that he knew Nunes. Sometime in January 2007, Nunes met with Manrique and asked him to verify that the woman Nunes was with, Heidi Haischer, was employed at the club. Manrique testified he did not recognize Haischer, that he had not seen her as an employee dancing at the club, and that he did not take any steps to determine whether she actually was an employee of the club. Manrique indicated his belief Nunes was asking him to falsely verify the woman's employment. When the lender called Manrique to verify Haischer's employment, he responded by giving the dates of employment that he had discussed with Nunes. Finally, Manrique testified that shortly after this, he received a check from Nunes for $300 that indicated it was for "advertising" (though he was not in the advertising business).

On cross-examination, Nunes's counsel focused on questions impeaching Manrique's credibility and further suggesting that Manrique was incorrect in his belief that Haischer did not work at the club. Nunes' counsel elicited a concession from Manrique that he believed Haischer did not work at the club because he did not recognize her. Counsel also elicited testimony permitting the jury to infer that Manrique did not recognize every woman employed at the club as a dancer.

Nunes argues his counsel was ineffective for failing to "present exculpatory evidence and witness testimony regarding the false testimony of Abel Manrique."[2] Nunes relies upon Manrique's grand jury and trial testimony, and the summaries of statements he made to the

---

[2] He also alleges that the government engaged in prosecutorial misconduct by permitting Manrique to testify falsely.

7

government in October and November 2010, and June 2011, as recorded in FBI 302s. He further asserts that he has, or had, possession of the Las Vegas Metropolitan Police Department's SCOPE report for Haischer which shows she had worked at the adult club. He alleges he has medical records showing Haischer broke her ankle on January 4, 2007. He also alleges that he has documentary evidence, as well as witnesses, showing that he participated in a baseball tournament in California in January 2007. Nunes states that that he provided his counsel with the names of witnesses, including Haischer and Larry Bergren who could testify regarding this trip.

Whether counsel should or should not have introduced this evidence at trial does not merely require hindsight analysis, but requires speculation that introduction would have done more good than harm. Assuming Haischer actually worked at the club, proving the actual dates of her employment could have instead emphasized that the employment dates recited on the employment verification, which Manrique testified were provided by Nunes, were false. Nunes speculates that evidence of Haischer's January 4th, injury would lead a jury to conclude that the meeting never occurred because Manrique would have remembered Haischer was wearing a cast. The more likely inference from this evidence, however, is that the meeting occurred prior to January 4th. That inference would have been consistent with the date Manrique filled in on the employment verification form: December 26, 2006. Rather than impeaching Manrique, introducing such evidence might have served to clarify and lend credence to his testimony.

Nunes' argument that his counsel erred in failing to emphasize additional discrepancies in the forged Martinez Letter of Explanation, and failing to counter the government's theory that Nunes' forged the letter, is not only as a further example of a hindsight attack on counsel's defense strategy but rests on nothing more than Nunes' own self-serving allegations. He asserts Winget and Mitchell forged the letter, but does not

identify any evidence supporting that assertion.[3] He asserts, without any reference to documentary evidence or the proposed testimony of a witness, that he disposed of the Martinez' file in March 2007 and then faults his counsel for not pointing out the forged letter was dated April 2007. He asserts his counsel should have called Mitchell as a witness, but he proffers no evidence that Mitchell (whom he alleges was implicated in the scheme) would have either testified on his behalf or that her testimony would have been exculpatory rather than inculpatory.

Accordingly, having considered the record as a whole, Nunes' numerous claims that he received ineffective assistance from his counsel, whether considered individually or cumulatively, are without merit claim and do not provide a gateway to otherwise consider his defaulted claims.[4]

Certificate of Appealability

To appeal this order, Nunes must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1); 9th Cir. R. 22–1(a). To obtain that certificate, he "must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (quotation omitted). This standard is "lenient."

---

[3] Nunes self-serving allegation–that Winget asked to see the Letter of Explanation, and that Mitchell allowed him to see the file, before she sent the file and the letter to the investigator from the Nevada Mortgage Lending Division–is not evidence that either Winget or Mitchell forged the letter.

[4] Nunes defaulted his first ground for relief–constructive amendment of the indictment–and his third ground for relief–prosecutorial misconduct. He has not alleged his appellate counsel was ineffective for failing to assert either issue on appeal. However, even if he had alleged his appellate counsel was ineffective for failing to assert these theories, the Court would deny the claims as neither issue is meritorious and the failure to argue the issues on appeal was not ineffective.

*Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc). I have denied Nunes' motion as to the claims that he procedurally defaulted, as he has not overcome that default. He has failed to allege any new evidence permitting an inference of actual innocence to overcome that default. He has also failed to overcome that default by showing cause and prejudice. The Court has liberally construed his motion as attempting to show cause and prejudice on the basis of ineffective assistance of counsel. The record of this case conclusively shows that his claim of ineffective assistance of counsel rests upon hindsight and second guessing of his counsel's strategies. Further, he has not established prejudice arising from the alleged errors of his counsel. For similar reasons, he cannot maintain his claim of ineffective assistance of counsel as a substantive claim. Therefore, for good cause shown,

THE COURT ORDERS that defendant Kelly Nunes' motion under 28 U.S.C. § 2255 (ECF No. 484) is DENIED.

THE COURT FURTHER ORDERS that defendant Kelly Nunes' request for a certificate of appealability is DENIED.

THE COURT FURTHER ORDERS that the Clerk of Court is directed to enter a separate civil judgment denying defendant Kelly Nunes' § 2255 motion. The Clerk also shall file this order and the civil judgment in this case and in the related civil case number 2:15-cv-1864-LDG.

DATED this 21 day of January, 2020.

_____
Lloyd D. George
United States District Judge